UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CASSANDRA VAUGHN JOHNSON, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:11-cv-1195-JMS-DKL |
| | ) | |
| MICHAEL J. ASTRUE, *Commissioner of the* | ) | |
| *Social Security Administration*, | ) | |
|     *Defendant.* | ) | |

### **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Cassandra Vaughn Johnson applied for disability and disability insurance benefits on October 31, 2007. Her application was denied both initially and upon reconsideration by the Defendant, Commissioner of the Social Security Administration ("the Commissioner"). Administrative Law Judge L. Zane Gill ("ALJ") held a hearing in January 2010 and later issued a finding that Ms. Johnson was not entitled to disability benefits. On June 7, 2011, the Appeals Council denied Ms. Johnson's request for review of the ALJ's decision. Ms. Johnson has filed this action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits.

## I.
### RELEVANT BACKGROUND

Ms. Johnson was approximately forty-three years old at the time of her disability application in October 2007. [Dkt. 16-2 at 42; R.41.] She has a master's degree in education. [Dkt. 16-2 at 44; R.43.] Ms. Johnson claims she is disabled because of chronic back pain, osteoarthritis of the hips and shoulders, migraines, and anxiety. [Dkt. 16-2 at 17; R.16.] Ms. Johnson testified that her disabilities stem from injuries she acquired in vehicular accidents that occurred in approximately 1974 and 1986. Prior to the onset of her alleged disability, Ms. Johnson was employed as a special education teacher for approximately ten or eleven years and as a waitress pri-

or to that.  [Dkt. 16-2 at 44; R.43, 48-49.]  Ms. Johnson claims that she was "under quite a bit of pain and stress" while working because of her injuries and was forced to end her employment due to the severity of the pain.  [Dkt. 16-2 at 47; R.46.]

Additional facts will be provided as necessary to review Ms. Johnson's denial of benefits.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).

## III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Ms. Johnson was not disabled.

At step one of the analysis, the ALJ found that Ms. Johnson had not engaged in substantial gainful activity since the alleged onset date of her disability.  [Dkt. 16-2 at 13; R.12.]

At step two, the ALJ identified four severe impairments from which Ms. Johnson suffers: chronic back pain, osteoarthritis of the hips and shoulders, migraines, and anxiety.  [Dkt. 16-2 at 13; R.12.]

At step three, the ALJ considered Listings 1.02, 1.04, 12.06, and 14.10.  [Dkt. 16-2 at 14; R.13, 15, 16.]  The ALJ also considered all of the listings contained in section 11.00.  [Dkt. 16-2 at 14; R. 13.]  The ALJ found that Ms. Johnson's chronic back pain, osteoarthritis of the hips of shoulders, and migraines did not rise to or exceed the severity of the listing levels.  [Dkt. 16-2 at 14; R.13.]

At step four, the ALJ found that Ms. Johnson had the RFC to perform light work. [Dkt. 16-2 at 17; R.16.] Specifically, the ALJ found that Ms. Johnson could perform a full range of unskilled work but was not limited to unskilled work. *Id.* The ALJ specified certain limitations, including no climbing of ladders, ropes, scaffolds, and no work that would include concentrated exposure to unprotected heights and moving machinery. *Id.* Based upon this RFC, the ALJ found that Ms. Johnson could not perform her past relevant work. [Dkt. 16-2 at 29; R.28.] The ALJ reviewed the evidence regarding Ms. Johnson's physical and mental impairments and determined that Ms. Johnson's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not credible. [Dkt. 16-2 at 18; R.17.]

Lastly, at step five, considering Ms. Johnson's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ determined that jobs existed in the national economy that Ms. Johnson could perform, such as a general office clerk, information clerk, and an inspector. [Dkt. 16-2 at 29-30; R.28-29.] Based upon the above findings, the ALJ concluded that Ms. Johnson was not disabled.

## IV.
### DISCUSSION

Ms. Johnson challenges the ALJ's decision for two reasons. First, Ms. Johnson argues that the ALJ erred by making an adverse credibility determination. Second, Ms. Johnson argues that the ALJ erred by failing to accord adequate weight to the opinion of three physicians when determining her RFC.

### A. Credibility Determination

In her opening brief, Ms. Johnson argues that the ALJ failed to properly evaluate her subjective reports of pain as required by SSR 96-7p and 20 C.F.R. § 404.1529 in making a credibility determination. Although Ms. Johnson concedes on reply that the ALJ considered the factors

necessary to assess her credibility, she contends that the "ALJ did not mention the internal inconsistency in the [RFC]" and ignored some of the evidence. [Dkt. 27 at 3.]

A credibility determination by the ALJ is given "considerable deference." *Prochaska v. Barnhart*, 454 F.3d 731, 728 (7th Cir. 2006). The ALJ's credibility determination will be reversed only if he fails to base the determination on grounds that are reasonable or supported by the evidence of record. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). When assessing the credibility of a claimant's individual statements, the ALJ must assess the following factors according to Social Security Ruling 96-7p:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. *See also* 20 C.F.R. § 404.1529(c)(3). Also, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements.[1] *Id.*

Ms. Johnson argues that the ALJ did not consider all of the evidence when addressing her credibility. [Dkt. 27 at 7; R.3.] Specifically, Ms. Johnson contends that the ALJ ignored a trip

---

[1] Ms. Johnson cites an out-of-circuit case for the proposition that the Court is required to follow the Program Operations Manual System ("POMS"), an internal manual used by the SSA, as "the latest word on departmental pain policy, committing the Secretary and superseding any inconsistent discussion." [Dkt. 23 at 6 (citing *Avery et al v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir. 1986)).] Ms. Johnson believes that POMS requires her complaints of pain to receive more deference than the ALJ gave them. [Dkt. 23 at 6.] Ms. Johnson ignores that the Seventh Circuit Court of Appeals has held that POMS has "no legal force and therefore . . . cannot be controlling." *Parker ex rel. Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989); *see also Gilpin v. Astrue*, 2012 U.S. Dist. LEXIS 35100, 13 (S.D. Ind. 2012). Accordingly, the Court will follow applicable Seventh Circuit precedent to review the ALJ's adverse credibility determination and will not discuss POMS further.

she took to the emergency room, certain x-rays of her back, her report to a doctor that her "nerves were shot", reports of pain she experienced that required extensive medication, a procedure she underwent for her back pain, and limitations she experienced in her daily activities. [Dkt. 23 at 7-8.]

After reviewing the evidence and the ALJ's opinion, the Court concludes that the ALJ provided substantial support for his adverse credibility determination. An ALJ is not required to recite every piece of evidence, as long as he gives a legitimate reason for his decision and builds an "accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ discussed Ms. Johnson's medical history and treatment and provided a detailed analysis regarding the inconsistencies between her self-reported symptoms, objective medical evidence, and her reported activities. Ultimately, the ALJ found Ms. Johnson not to be credible because evidence in the record contradicted her claimed limitations.

Specifically, the ALJ noted that despite Ms. Johnson's claim that she is unable to walk normally, two doctors routinely recorded her gait as within functional limits. [Dkt. 16-2 at 24; R. 22; dkt. 16-7 at 58-59; R.260-61; dkt. 16-7 at 92; R.294.] And although Ms. Johnson claims she cannot work, her alleged disability did not prevent her from attending a family reunion and going down a waterslide. [Dkt. 16-9 at 53; R.415.] Moreover, the ALJ observed that Ms. Johnson has a craft room and can sew, which he noted shows manual dexterity. [Dkt. 16-7 at 75; R.277.] Ms. Johnson also is able to attend and sit at sporting events, despite her claims that she cannot sit. [Dkt. 16-6 at 23; R. 156.] Additionally, Ms. Johnson can fully close all of her fingers in a fist, pick up coins, and button clothing using both hands. [Dkt. 16-2 at 26; R.25; Dkt. 16-7 at 94; R.296.]

Ms. Johnson wholly ignores the evidence that the ALJ cited to support the adverse credibility determination, specifically the inconsistencies between her claimed limitations and her daily activities. Because the ALJ built and adequate logical bridge supporting the adverse credibility finding by sufficiently explaining why he found Ms. Johnson not to be credible, the Court rejects Ms. Johnson's argument to the contrary.

### B. Adequate Weight to Physician's Opinions

Ms. Johnson argues that the ALJ erred by failing to accord adequate weight to the opinion of her treating physician Dr. John Fitzgerald, consultative examining expert Dr. William Kelley, and State Agency Medical Consultant Dr. J. Sands. Ms. Johnson argues that these providers made similar determinations regarding her limitations that exceeded the RFC determined by the ALJ. Ms. Johnson concedes on reply; however, that the ALJ provided a detailed explanation for rejecting each of the physicians' opinions. [Dkt. 27 at 3.] Nevertheless, she argues that the ALJ did not clarify which inconsistencies in the physicians' reports warranted rejecting the limitations set forth by the physicians. *Id.*

The ALJ has the statutory responsibility of assessing a claimant's RFC. 20 C.F.R § 404.1546(c). Ms. Johnson correctly notes that the ALJ must consider length of the treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that the claimant brings to the attention of the ALJ. 20 C.F.R. § 404.1527(c). An ALJ must consider all relevant medical evidence and is not allowed to single out certain facts that will support a "finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)); *see also Richison v. Astrue*, 2012 WL 377674, *3 (7th Cir. 2012) (holding that an RFC determination must account for all impairments

and the cumulative effects of those impairments).  However, an ALJ is not required to recite every piece of evidence, so long as he gives a legitimate reason for his decision and builds an "accurate and logical bridge from the evidence to his conclusion."  *Clifford*, 227 F.3d at 872.

### 1.  Dr. Fitzgerald

Dr. Fitzgerald is a pain management specialist affiliated with the Center for Pain Management.  [Dkt. 16-7 at 56; R.258.]  Dr. Fitzgerald began treating Ms. Johnson on approximately November 29, 2007.  *Id.*  Ms. Johnson sought consultation and treatment from Dr. Fitzgerald approximately twenty times over the next two years.  During those visits, Ms. Johnson complained to Dr. Fitzgerald of back and hip pain.

At the initial consultation, Dr. Fitzgerald found that Ms. Johnson's gait was within functional limits and her concentration was within normal limits.  [Dkt. 16-7 at 58-59; R.260-61.]  Dr. Fitzgerald also found that Ms. Johnson's shoulders had full range of motion.  [Dkt. 16-7 at 59; R.261.]  These findings did not differ significantly throughout Dr. Fitzgerald's treatment of Ms. Johnson.

At various times throughout Ms. Johnson's treatment, Dr. Fitzgerald prescribed a series of injections to alleviate Ms. Johnson's pain symptoms.  On March 26, 2009, Dr. Fitzgerald completed a medical assessment of Ms. Johnson's ability to perform physical work-related activities.  [Dkt. 16-9 at 60-63; R.422-25.]  In that assessment, Dr. Fitzgerald indicated that Ms. Johnson could occasionally lift and carry up to ten pounds; sit, stand, and walk for no more than one hour in an eight hour workday; frequently perform simple grasping and occasional fine manipulation with both hands; continuously use both feet; occasionally climb, balance, stoop and crawl but never crouch or kneel; frequently reach, handle and feel, occasionally push and pull; and that

she should avoid all exposure to heights and moving machinery and avoid concentration with vibrations. *Id.*

The ALJ assigned little weight to Dr. Fitzgerald's opinion to the extent it was inconsistent with the ALJ's RFC and not supported by the evidence. [Dkt. 16-2 at 26; R.25.] The ALJ cited multiple inconsistencies between Dr. Fitzgerald's opinion and the evidence. For example, although Dr. Fitzgerald limited Ms. Johnson's ability to sit to only 20 or 30 minutes at a time and for no more than one hour in an eight-hour workday, this limitation is not consistent with evidence that Ms. Johnson was able to attend sporting events coached by her husband and sit for longer periods of time. [Dkt. 16-2 at 26; R. 25; dkt. 16-6 at 23; R.156.]

Additionally, while Dr. Fitzgerald concluded that Ms. Johnson could only perform fine manipulation occasionally with her right hand, that finding contradicts Dr. Kelley's finding that Ms. Johnson could fully close all of her fingers in a fist, pick up coins, and button clothing using both hands. [Dkt. 16-2 at 26; R.25; Dkt. 16-7 at 94; R.296.] Dr. Fitzgerald's finding regarding Ms. Johnson's limited ability to perform fine manipulation also contradicts Ms. Johnson's representation that she has a craft room in her home that she uses for "sewing and things like that," [dkt. 16-7 at 75; R.277], which the ALJ observed generally requires intact bilateral fine finger manipulation, [dkt. 16-2 at 27; R.26].

The ALJ also discounted Dr. Fitzgerald's conclusion that Ms. Johnson can only occasionally balance because it was not consistent with his conclusion that she had gait within functional limits or Dr. Kelley's conclusion that Ms. Johnson had a normal gait that was not unsteady, lurching, or predictable. [Dkt. 16-2 at 27; dkt. 16-7 at 92; R.294.]

Finally, the ALJ determined that Ms. Johnson's ability to attend a family reunion at a water park and go down a water slide that required her to climb stairs was inconsistent with various

limitations Dr. Fitzgerald prescribed. [Dkt. 16-2 at 27; R. 26; Dkt. 16-9 at 53; R.415.] And the ALJ noted that Dr. Fitzgerald, a pain specialist, invariably based his medical opinion in part on Ms. Johnson's subjective representations, which the ALJ had already rejected with the adverse credibility finding. [Dkt. 16-2 at 27; R. 26.]

The Court concludes that the ALJ did not err in assigning little deference to the medical opinion of Dr. Fitzgerald. The ALJ provided a detailed analysis of how Dr. Fitzgerald's medical opinion regarding Ms. Johnson's alleged limitations was inconsistent with Ms. Johnson's actual physical activities. Specifically, Ms. Johnson's ability to sit at a sporting event, sew, and participate in a family outing at a water park contradict the functional limitations proposed by Dr. Fitzgerald and are evidence that she is not disabled. Ms. Johnson does not dispute the ALJ's assessment of these events or the ALJ's specific rationale for limiting Dr. Fitzgerald's opinion. In fact, Ms. Johnson admits on reply that the ALJ "gave a detailed explanation for rejecting" Dr. Fitzgerald's opinion. [Dkt. 27 at 3.] Because the ALJ built a logical bridge and adequately explained his rational for assigning little weight to Dr. Fitzgerald's medical opinion, the Court rejects Ms. Johnson's argument regarding the ALJ's treatment of Dr. Fitzgerald's opinion.

### 2. Dr. Kelley

Dr. Kelley, as a consultative examining expert, evaluated Ms. Johnson in February 2008 regarding the impact of her impairments on her ability to perform work related activities. [Dkt. 16-7 at 91; R.293.] Dr. Kelley concluded that Ms. Johnson may be able to perform some sedentary activity on a very limited basis that did not include significant lifting, stooping, bending, climbing, or overhead work. [Dkt. 16-7 at 95; R.297.] Dr. Kelley also found that Ms. Johnson might be able to do mild mechanical activities using her upper and lower extremities, hands, and feet. [*Id.*]

The ALJ assigned little weight to Dr. Kelley's opinion to the extent it was inconsistent with the ALJ's RFC and not supported by the evidence. [Dkt. 16-2 at 27; R.26.] The ALJ recognized that Dr. Kelley's conclusion was based, in part, on Ms. Johnson's subjective representations but that the objective portions of Dr. Kelley's examination did not reveal any findings that could account for the severity of his final assessment. [*Id.*] For example, the ALJ emphasized that although Dr. Kelley concluded that Ms. Johnson would not be able to perform work that involved significant stooping and bending, that conclusion conflicted with his finding that she had full range of motion of her cervical and lumbar spine. [Dkt. 16-2 at 27; R. 26; dkt. 16-7 at 96; R.298.] Additionally, although Dr. Kelley limited Ms. Johnson to mild mechanical activities that involved her hands, the ALJ observed that this contradicted Dr. Kelley's objective findings that Ms. Johnson had full grip strength and could fully close all of her fingers in a fist, pick up coins, and button clothing with both hands. [Dkt. 16-2 at 27; R. 26; dkt. 16-7 at 94; R.296.] The ALJ emphasized that those objective findings were also consistent with Ms. Johnson's ability to sew. [Dkt. 16-2 at 27; R. 26.]

Finally, the ALJ concluded that to the extent Dr. Kelley relied on Ms. Johnson's subjective allegations, the opinion had to be discounted because the ALJ had already found Ms. Johnson's subjective reports to be inconsistent with objective evidence. [Dkt. 16-2 at 27-28; R. 26-27.] Specifically, as explained above, Ms. Johnson's ability to sit at a sporting event, sew, and participate in a family outing at a water park contradict her subjective reports and the functional limitations proposed by Dr. Kelley.

The Court concludes that the ALJ did not err in assigning little weight to the medical opinion of Dr. Kelley. Specifically, the ALJ provided a detailed analysis of his rationale for limiting Dr. Kelley's opinion by identifying inconsistencies within Dr. Kelley's opinion and con-

flicts between his opinion and objective evidence. Because the ALJ adequately supported his decision to assign little deference to Dr. Kelley's medical opinion, the Court rejects Ms. Johnson's argument regarding the ALJ's treatment of Dr. Kelley's opinion.

### 3. Dr. Sands

Dr. Sands, a State Agency Medical Consultant, examined Ms. Johnson in February 2008. [Dkt. 16-8 at 32-39; R.329-36.] Dr. Sands determined that Ms. Johnson could occasionally lift or carry ten pounds; frequently lift or carry less than ten pounds; stand or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; push or pull in an unlimited capacity; had no difficulty with ambulation; had no visual, hearing, or speaking limitations; had no environmental limitations; felt comfortable in the seated and supine positions; was able to close all fingers in a fist, pick up coins, and button her clothing; was able to walk on her toes and heels; had the ability to squat and tandem walk; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.*

The ALJ assigned little weight to Dr. Sands' opinion to the extent it was inconsistent with the ALJ's RFC and not supported by the evidence. [Dkt. 16-2 at 28; R.27.] The ALJ found it to be significant that Dr. Sands considered Ms. Johnson's allegations regarding her functional limitations to be "fully credible" because, as detailed above, the ALJ found Ms. Johnson's limitations to conflict with objective evidence in the record. [Dkt. 16-2 at 28; R. 27.] As previously detailed, the ALJ relied on evidence showing that Ms. Johnson was able to sew, sit during her spouse's sporting events, and go down a water slide requiring her to climb stairs. [*Id.*] Accordingly, the ALJ concluded that Dr. Sands had "underestimated [Ms. Johnson's] actual ability to function." [*Id.*]

The ALJ also emphasized that Dr. Sands' opinion that Ms. Johnson could only balance on an occasional basis conflicted with evidence in the record from Dr. Kelley and Dr. Fitzgerald that Ms. Johnson had a normal gait, indicating she was able to balance. [Dkt. 16-2 at 28; R. 27; dkt. 16-7 at 92; R. 294; dkt. 16-8 at 4; R.301.] The ALJ further noted that Dr. Sands' opinion was internally inconsistent because although he had found Ms. Johnson to be "full[y] credible," she had alleged she was unable to sit for any length of time and he had concluded that she was able to sit for 6 to 8 hours. [Dkt. 16-2 at 28 n.3.]

The Court concludes that the ALJ did not err in assigning little deference to the medical opinion of Dr. Sands. Specifically, the ALJ provided a detailed analysis of his rationale for limiting Dr. Sands' opinion by explaining why he believed Dr. Sands underestimated Ms. Johnson's functional abilities and identifying conflicts between Dr. Sands' opinion and objective evidence. Because the ALJ adequately supported his decision to assign little deference to Dr. Sands' medical opinion, the Court rejects Ms. Johnson's argument regarding the ALJ's treatment of Dr. Sands' opinion.

In sum, the Court concludes that the ALJ fulfilled his duty in reviewing all of the evidence and assigning legitimate reasons for his departure from the opinion of the physicians at issue. The ALJ reviewed the evidence regarding Ms. Johnson's impairments and provided a detailed analysis regarding inconsistencies between the opinions of the providers at issue and objective medical evidence. Moreover, as noted multiple times, Ms. Johnson's ability to sit at a sporting event, sew, and participate in a family outing at a water park contradict her subjective reports and the functional limitations and support the ALJ's conclusion that she is not disabled. For these reasons, the Court rejects Ms. Johnson's argument that the ALJ failed to give a detailed explanation for limiting the opinions of Drs. Fitzgerald, Kelley, and Sands.

- 14 -

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis for overturning the ALJ's determination that Ms. Johnson does not qualify for disability benefits.

06/15/2012

                                              Hon. Jane Magnus-Stinson, Judge
                                              United States District Court
                                              Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Thomas C. Newlin II
FLESCHNER STARK TANOOS & NEWLIN
kduzan@fleschnerlaw.com